# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

COACH, INC., *et al.*,

    *Plaintiffs*,

        - against -

PETER J. SAPATIS,
LONDONDERRY MARKETPLACE, LLC,
ALAINA E. PAUL, and
TABA ENTERPRISES, LLC, d/b/a TABA
Enterprises, Londonderry Flea Market,
Londonderry Marketplace, and/or TABA
Enterprises,

    *Defendants*.

C.A. No. 1:12-cv-00506-PB

## PROPOSED JURY INSTRUCTIONS

Plaintiffs Coach, Inc., and Coach Services, Inc., (collectively "Plaintiffs" or "Coach")

through undersigned counsel, respectfully submit their Proposed Jury Instructions.

**<u>Preliminary Instruction – Trademark</u>**

As one of their claims, Coach seeks damages against Defendants TABA Enterprises, LLC, Peter J. Sapatis and Alaina E. Paul for contributory trademark infringement.  To help you understand the evidence that will be presented in this case, I will explain some of the legal terms you will hear during this trial.

**Authority**:     Pattern Federal Civil Jury Instructions, Ninth Circuit, 15.0 (2007) (modified).

## PROPOSED JURY INSTRUCTION NO. 1

### **Trademark Defined**

This case involves trademarks, which are sometimes referred to simply as "marks." The term "trademark" includes any word, name, symbol or device or any combination thereof adopted and used by a manufacturer or merchant to identify and distinguish its goods or services, including a unique product or service, from those sold or offered by others and to indicate the source of those goods or services, even if that source is unknown.

The main function of a trademark is to identify and distinguish goods or services as a product or service of a particular merchant and to protect its goodwill against the sale of another's product as its own.

A trademark is also a merchandising symbol that helps a prospective purchaser to select the goods or services that the purchaser wants. A trademark signifies that all goods bearing the mark derive from a single source and are equivalent in quality. There is therefore a public interest in the use of trademarks.

**Authority:**     Modern Federal Jury Instructions-Civil, 86A-1 (Matthew Bender); 15 U.S.C. § 1129.

## PROPOSED JURY INSTRUCTION NO. 2

### **Counterfeit - Defined**

A counterfeit trademark or counterfeit mark is a non-genuine or unauthorized copy of a trademark. It is identical with, or substantially indistinguishable from, a registered trademark. The distribution, sale, or offer for sale of goods bearing a counterfeit mark is illegal under federal law and a form of trademark infringement referred to as "counterfeiting."  This is true even if a person merely sells or offers for sale goods bearing a counterfeit mark and plays no part in affixing or placing the counterfeit mark on the goods, or otherwise designing or manufacturing the goods.

**Authority:**     *M. Epstein, Modern Intellectual Property* 289 (2d ed. 1991); 15 U.S.C. §§ 1114, 1116, 1127.

## PROPOSED JURY INSTRUCTION NO. 3

### **Owner of Trademark**

The law entitles the owner of a trademark to permit or exclude others from using that trademark. The owner of a trademark may enforce the right to exclude others in an action for trademark infringement.

**Authority:**    Modern Federal Jury Instructions-Civil, 86A-2 (Matthew Bender); 15 U.S.C. § 1114(1).

## PROPOSED JURY INSTRUCTION NO. 4

### <u>Trademark Ownership - Licensee</u>

The owner of a trademark may enter into an agreement that permits another person or entity to use the trademark.  This type of agreement is called a license, and the person or entity permitted to use the trademark is called a licensee.

A license agreement may include the right to exclude others from using the trademark(s). A licensee may enforce this right to exclude others in an action for infringement.

You are instructed to accept as fact that: (1) Plaintiff Coach Services, Inc. is the owner of the trademarks that are at issue in this case; and (2) Plaintiff Coach Services, Inc. previously entered into a license agreement with Plaintiff Coach, Inc., the licensee, which permits Coach, Inc. to use the trademarks at issue and to exclude others from using those trademarks.

**Authority:** Pattern Federal Civil Jury Instructions, Ninth Circuit, 15.14 (2007) (modified).

## PROPOSED JURY INSTRUCTION NO. 5

### <u>Legal Entity Acts through its Agents</u>

A legal entity, such as Coach, Inc., Coach Services, Inc. and TABA Enterprises, LLC can only act or not act through its agents. A simple and common example of this concept is that an employee is an agent for his employer when he acts within the scope of his authority. Furthermore, the store owner is responsible for the acts of its agents acting within the scope of this authority.

So, a legal entity can only act, fail to act, exercise control, fail to exercise control, acquire knowledge, be willfully blind, communicate, fail to communicate or otherwise conduct itself because of what its agents do or fail to do. An agent is an individual who performs services for another under an express or implied agreement and who is subject to the other's control or right to control the manner and means of performing the services. The entity or individual who controls or has the right to control the agent's manner and means of performing the services is called a "principal."

Any act or omission of an agent within the scope of authority is also considered to be the act or omission of the principal. Principals and agents may be legal entities or human persons. If you find that an agent, within the scope of this authority, acted or failed to act, then you must consider the act or omission of the agent to be also the act or omission of the principal. Therefore, a principal, whether it be a legal entity principal or an individual, is responsible for the acts of its agents acting within the scope of their authority, whether they be legal entity agents or human agents.

For example, Coach is the principal of its employees and the investigators it hires. Those individuals are considered to be the agents of Coach (collectively, "Coach's Agents").

In deciding the case you must follow and apply all of the law as I explain it to you, whether you agree with that law or not; and you must not let your decision be influenced in any way by sympathy, or by prejudice, for or against anyone.

**Authority**:    *Restatement of the Law—Agency, Restatement* (Third) of Agency (2006), § 1.01, et. seq.

**PROPOSED JURY INSTRUCTION NO. 6**

**<u>Trademark Infringement – Purpose</u>**

Plaintiffs Coach, Inc. and Coach Services, Inc. (together "Coach") are suing the Defendants for contributory trademark infringement.  To find Defendants liable, you must first determine whether or not any of the vendors at the Londonderry Flea Market (the "Flea Market") infringed any of Coach's trademarks.

A trademark is a word, symbol or combination of both used by a person or company to identify their product, to distinguish their product from those manufactured by others, and to indicate the source of their product.

The purpose of trademark law is to prevent confusion among consumers about the source of products and to permit trademark owners to show ownership of their products and control their products' reputation.

**Authority**:     Seventh Circuit Pattern Jury Instruction 13.1.1; *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 774 (1992).

**PROPOSED JURY INSTRUCTION NO. 7**

## Trademark Infringement – Registration, Incontestability, Constructive Knowledge

You are instructed and must accept as a fact that Coach owns the federal registrations for the trademarks they seek to protect in this action.  Because some of these trademarks have been in continuous use for at least the past five consecutive years, Coach has the incontestable right to use these registered trademarks in commerce for the products it sells under the trademarks.

Because Coach owns federal registrations for its trademarks, Defendants and their vendors are deemed to have knowledge of these registrations and of the rights claimed in the registrations. This is known as "constructive notice," and Defendants and their vendors cannot claim that they adopted the words, symbols or designations they used on their goods without knowledge of Coach's trademarks. In this case, Coach enjoys nationwide constructive notice of rights dating back to the filing date of its trademark applications.

**Authorities**:   15 U.S.C. §§ 1065, 1072, 1114(a); Eleventh Circuit Pattern Jury Instruction 10.1; *In re Int'l Flavors & Fragrances Inc.,* 183 F.3d 1361, 1367 (Fed.Cir.1999); *Dorpan, S.L. v. Hotel Melia, Inc.*, 728 F.3d 55, 61 (1st Cir. 2013); *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d  355, 360 (11th Cir. 1997); *Petmed Express, Inc. v. Medpots.com,* 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004); *see e.g.*, Coach Op Art & Design, Registration No. 3,696,470; Coach, Registration No. 0,751,493.

## PROPOSED JURY INSTRUCTION NO. 8

## <u>Trademark Infringement – Likelihood of Confusion</u>

In order to prove trademark infringement, Coach must show that: (1) Coach owns a valid trademark; and (2) the Vendors at the Flea Market used a word, symbol or other designation on their products that created a likelihood of confusion, mistake, or deception among consumers as to the source, affiliation, or sponsorship of the Vendors' products.

In deciding whether Coach has established a likelihood of confusion, you should consider the following factors: (1) the distinctiveness or strength of the trademarks that Coach alleges to have been infringed; (2) the similarity of the words, symbols or designations used by the Vendors on products they sold at the Flea Market to Coach's trademarks; (3) the similarity between the goods or services sold or offered for sale by the Vendors and those sold by Coach under its trademarks; (4) the similarity of the trade channels used by the parties; (5) the similarity of advertising methods; (6) the bad faith intent of the Vendors in adopting words, symbols or designations for their products that resemble Coach's trademarks; and (7) the existence and extent of any actual confusion among consumers.  No single factor is dispositive, and you may find that there was a likelihood of confusion even if you do not find that a majority of the factors support that finding.

However, in the case of the alleged Vendors' use of a counterfeit trademark, likelihood of confusion is clear and should be presumed.

**Authorities:** *DeCosta v. Viacom Int'l, Inc.*, 981 F.2d 602, 605-06 (1st Cir. 1992); *Anheuser-Busch, Inc. v. Caught-on-Bleu, Inc.*, 288 F. Supp. 2d 105, 113-14 (D.N.H. 2003) *aff'd*, 105 F. App'x 285 (1st Cir. 2004); *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1360-61 (11th Cir. 2007); *Frehling Enterprises, Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999); 15 U.S.C. § 1114;; *Monsanto Co. v. Campuzano*, 206 F. Supp. 2d 1239, 1245 (S.D. Fla. 2002) *modified*, 206 F. Supp. 2d 1270 (S.D. Fla. 2002); J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition, §* 25:10, 4th Ed. (2003); *Gucci America, Inc. v. Duty Free*

*Apparel,* 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003) ("counterfeits, by their very nature, cause confusion"); *Philip Morris U.S.A. Inc. v. Felizardo,* 2004 U.S. Dist. LEXIS 11154, at *18 (S.D.N.Y. 2004) ("in cases involving counterfeit marks, it is unnecessary to perform the step-by-step examination of [the factors] because counterfeit marks are inherently confusing"); *General Motors Corp. v. Autovation Technologies, Inc.,* 317 F. Supp. 2d 756, 761 (E.D. Mich. 2004) ("a likelihood of confusion is presumed when a defendant intentionally copies a trademark design").

## PROPOSED JURY INSTRUCTION NO. 9

### Contributory Trademark Infringement – TABA Enterprises, LLC

I will now instruct you as to Coach's claim for contributory trademark infringement against TABA Enterprises, LLC.

In order to hold Defendant TABA Enterprises, LLC liable for contributory trademark infringement, Coach must prove two things, both by a preponderance of the evidence, that: (1) TABA Enterprises, LLC provided services including but not limited to space, utilities, parking, advertising and customers to any vendor at the Flea Market that it knew or had reason to know was selling or offering for sale products bearing counterfeits of any of Coach's trademarks (the "Counterfeiting Vendor(s)"); and (2) TABA Enterprises, LLC had the ability, power or right to exercise control over the means of any Counterfeiting Vendors' infringing activities at the Flea Market.  I will refer to the first factor as the "knowledge" factor and the second as the "control" factor, and will now explain both of those factors in more detail.

**Authorities:**   *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 500 (6th Cir. 2013); *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1249 (10th Cir. 2013); *Hard Rock Cafe Licensing Corp. v. Concession Services, Inc.*, 955 F.2d 1143 (7th Cir. 1992); *Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259 (9th Cir. 1996); *Lockheed Martin Corp. v. Network Solutions, Inc.,* 194 F.3d 980 (9th Cir. 1999*); Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc*., 658 F.3d 936 (9th Cir. 2011); *Coach, Inc. v.* Sapatis, No. 12-CV-506-PB 2014 WL 347712 (D.N.H. Jan. 31, 2014); Gucci *America, Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228 (S.D. N.Y. 2010); *Coach, Inc. v. Gata Corp.,* No. 10-cv 141-LM, 2011 WL 2358671 (D. N.H. June 9, 2011); *Louis Vuitton Malletier v. Texas International Partnership, et al.,* No. 4:10-cv-02821-GHM, Order (S.D. Tex. November 18, 2011); *Louis Vuitton Malletier v. Eisenhauer Road Flea Market, Inc., et al.,* No. 5:11-cv-00124- HLH, Order Regarding Defendants' Motion for Summary Judgment (W.D. Tex. December 19, 2011).

## PROPOSED JURY INSTRUCTION NO. 10

### Contributory Trademark Infringement Element 1: Knowledge Factor

Coach must prove that Defendant TABA Enterprises, LLC permitted renting space to any vendor at the Flea Market that it knew, or had reason to know, was selling or offering for sale products bearing counterfeits of any of Coach's trademarks.   Because Defendant TABA Enterprises, LLC is a legal entity, in order for Coach to prove that TABA Enterprises, LLC knew or had reason to know that it was renting space to any Counterfeiting Vendor, Coach must prove that at least one agent or employee of Defendant TABA Enterprises, LLC had: (a) knowledge of any Counterfeiting Vendors' sale or offer for sale of products bearing counterfeits of any of Coach's trademarks ("Counterfeit Goods"); (b) had reason to know of such sale or offer for sale; or (c) were willfully blind to such sale or offer for sale.

Defendants TABA Enterprises, LLC's knowledge of any Counterfeiting Vendors' sale or offer for sale of Counterfeit Goods may be shown by proof of any of the following: actual knowledge of, constructive knowledge of, or willful blindness by Defendant TABA Enterprises, LLC to any Counterfeiting Vendors' sale or offer for sale of Counterfeit Goods.  These terms are defined respectively as follows.

Actual knowledge exists where it can be shown by the conduct, statements or observations of Defendant TABA Enterprises, LLC, by or through its agents, that Defendant TABA Enterprises, LLC had specific knowledge of any Counterfeiting Vendor who was selling or offering for sale Counterfeit Goods.

Constructive knowledge exists where a reasonably prudent landlord or its agents would have, or should have, known of any Counterfeiting Vendors' sale or offer for sale of Counterfeit Goods.  Therefore, in considering whether Defendant TABA Enterprises, LLC had constructive

knowledge, you must determine what a reasonably prudent landlord or its agents would have understood in light of all the facts and circumstances.

Willful blindness exists where it can be shown that Defendant TABA Enterprises, LLC, by or through its agents, had reason to suspect that any of its Counterfeiting Vendors were selling or offering for sale Counterfeit Goods, but TABA Enterprises, LLC failed to genuinely investigate, or looked the other way to avoid seeing such activity.

If you find that Defendant TABA Enterprises, LLC, by or through its agents, had actual knowledge, constructive knowledge or was willfully blind towards any of its Counterfeiting Vendors' sales or offers for sale of Counterfeit Goods, then you must find that Coach has proved the knowledge element of its claim against TABA Enterprises, LLC.

**Authorities:**   *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 500 (6th Cir. 2013); *Hard Rock Cafe Licensing Corp. v. Concession Services, Inc*., 955 F.2d 1143 (7th Cir. 1992); *Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259 (9th Cir. 1996); *Lockheed Martin Corp. v. Network Solutions, Inc.,* 194 F.3d 980 (9th Cir. 1999); *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc*., 658 F.3d 936 (9th Cir. 2011); Gucci *America, Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228 (S.D. N.Y. 2010); *Coach, Inc. v. Gata Corp.,* No. 10-cv 141-LM, 2011 WL 2358671 (D. N.H. June 9, 2011); *Louis Vuitton Malletier v. Texas International Partnership, et al.,* No. 4:10-cv-02821-GHM, Order (S.D. Tex. November 18, 2011); *Louis Vuitton Malletier v. Eisenhauer Road Flea Market, Inc., et al.,* No. 5:11-cv-00124- HLH, Order Regarding Defendants' Motion for Summary Judgment (W.D. Tex. December 19, 2011).

**PROPOSED JURY INSTRUCTION NO. 11**

**Contributory Trademark Infringement Element 2: Control**

Coach must prove that Defendant TABA Enterprises, LLC had the ability, power or right to, or did in fact exercise control over the means of any Counterfeiting Vendors' infringement at the Flea Market.  In this case, the means of the Counterfeiting Vendors' infringement is the retail space that they rented from the Flea Market.

The control element is satisfied by proof, by a preponderance of the evidence, that Defendant TABA Enterprises, LLC possessed the right, ability or power to control either (i) the use of the physical retail space that it rented at the Flea Market, or (ii) the activities that any of its Counterfeiting Vendors could engage in while occupying such space at the Flea Market.  Thus, you may find that Defendant TABA Enterprises, LLC had the requisite control if it had the right, ability or power to remove any of the Counterfeiting Vendors from the Flea Market, whether by terminating their rental agreement, deciding not to rent to them anymore, or evicting them.  In addition, you may find that Defendant TABA Enterprises, LLC had the requisite control if through its rules, rental agreement and any other documents TABA Enterprises, LLC had any of its Counterfeiting Vendors sign, TABA Enterprises, LLC had a significant say in what activities any of its Counterfeiting Vendors could and could not do at the Flea Market.

For purposes of your analysis, the relevant question is not whether Defendant TABA Enterprises, LLC actually exercised such control, but whether it had the right, ability or power to exercise such control.  Hence, if you find that Defendant TABA Enterprises, LLC possessed the right, ability or power to control either (i) the use of the physical retail space that it rented at the Flea Market, or (ii) the activities that any of the Counterfeiting Vendors could engage in while occupying such space at the Flea Market, then you must find that Coach has proven the control

element against TABA Enterprises, LLC.  If you find that Coach has proven that Defendant

TABA Enterprises, LLC had both the requisite control and knowledge, then you must find that

TABA Enterprises, LLC is liable to Coach for contributory trademark infringement.

**Authorities:**  *Lockheed Martin Corp. v. Network Solutions, Inc.,* 194 F.3d 980 (9th Cir. 1999); *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.,* 658 F.3d 936 (9th Cir. 2011); *Tiffany (NJ), Inc. v. eBay, Inc.*, 600 F.3d 93, 104 (2d Cir. 2010); *Coach, Inc. v. Gata Corp.*, No. 10-CV-141-LM, 2011 WL 2358671, at *7 (D.N.H. June 9, 2011); *Gucci America, Inc. v. Frontline Processing Corp.,* 721 F. Supp. 2d 228 (S.D.N.Y. 2010); *Louis Vuitton Malletier v. Texas International Partnership,* et al., No. 4:10-cv-02821-GHM, Order (S.D. Tex. Nov. 18, 2011).

## PROPOSED JURY INSTRUCTION NO. 12

### <u>Contributory Trademark Infringement – Peter J. Sapatis</u>

I will now instruct you as to Coach's claim for contributory trademark infringement against Peter J. Sapatis.

In order to hold Defendant Peter J. Sapatis liable for contributory trademark infringement, Coach must prove two things, both by a preponderance of the evidence, that: (1) Peter J. Sapatis provided services including but not limited to space, utilities, parking, advertising and customers to any vendor at the Flea Market that he knew or had reason to know was selling or offering for sale products bearing counterfeits of any of Coach's trademarks (the "Counterfeiting Vendor(s)"); and (2) Peter J. Sapatis had the ability, power or right to exercise control over the means of any Counterfeiting Vendors' infringing activities at the Flea Market.  I will refer to the first factor as the "knowledge" factor and the second as the "control" factor, and will now explain both of those factors in more detail.

**Authorities:**   *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 500 (6th Cir. 2013); *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1249 (10th Cir. 2013); *Hard Rock Cafe Licensing Corp. v. Concession Services, Inc*., 955 F.2d 1143 (7th Cir. 1992); *Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259 (9th Cir. 1996); *Lockheed Martin Corp. v. Network Solutions, Inc.,* 194 F.3d 980 (9th Cir. 1999*); Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc*., 658 F.3d 936 (9th Cir. 2011); *Coach, Inc. v.* Sapatis, No. 12-CV-506-PB 2014 WL 347712 (D.N.H. Jan. 31, 2014); Gucci *America, Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228 (S.D. N.Y. 2010); *Coach, Inc. v. Gata Corp.,* No. 10-cv 141-LM, 2011 WL 2358671 (D. N.H. June 9, 2011); *Louis Vuitton Malletier v. Texas International Partnership, et al.,* No. 4:10-cv-02821-GHM, Order (S.D. Tex. November 18, 2011); *Louis Vuitton Malletier v. Eisenhauer Road Flea Market, Inc., et al.,* No. 5:11-cv-00124- HLH, Order Regarding Defendants' Motion for Summary Judgment (W.D. Tex. December 19, 2011).

## PROPOSED JURY INSTRUCTION NO. 13

### **Contributory Trademark Infringement Element 1: Knowledge Factor**

Coach must prove that Defendant Peter J. Sapatis provided services including but not limited to space, utilities, parking, advertising and customers to any vendor at the Flea Market that he knew or had reason to know was selling or offering for sale products bearing counterfeits of any of Coach's trademarks.  Coach must prove that Defendant Peter J. Sapatis had: (a) knowledge of any Counterfeiting Vendors' sale or offer for sale of products bearing counterfeits of any of Coach's trademarks ("Counterfeit Goods"); (b) had reason to know of such sale or offer for sale; or (c) was willfully blind to such sale or offer for sale.

Defendants Peter J. Sapatis's knowledge of any Counterfeiting Vendors' sale or offer for sale of Counterfeit Goods may be shown by proof of any of the following: actual knowledge of, constructive knowledge of, or willful blindness by Defendant Peter J. Sapatis to any Counterfeiting Vendors' sale or offer for sale of Counterfeit Goods.  These terms are defined respectively as follows.

Actual knowledge exists where it can be shown by Defendant Peter J. Sapatis's conduct, statements or observations that he had specific knowledge of any Counterfeiting Vendor who was selling or offering for sale Counterfeit Goods.

Constructive knowledge exists where a reasonably prudent person in the position of Peter J. Sapatis would have, or should have, known of any Counterfeiting Vendors' sale or offer for sale of Counterfeit Goods.  Therefore, in considering whether Defendant Peter J. Sapatis had constructive knowledge, you must determine what a reasonably prudent person in his position would have understood in light of all the facts and circumstances.

19

Willful blindness exists where it can be shown that Defendant Peter J. Sapatis had reason to suspect that any of the Counterfeiting Vendors were selling or offering for sale Counterfeit Goods, but Peter J. Sapatis failed to genuinely investigate, or looked the other way to avoid seeing such activity.

If you find that Defendant Peter J. Sapatis had actual knowledge, constructive knowledge or was willfully blind towards any of the Counterfeiting Vendors' sales or offers for sale of Counterfeit Goods, then you must find that Coach has proved the knowledge element of its claim against Peter J. Sapatis.

**Authorities:** *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 (1982); *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 500 (6th Cir. 2013); *Hard Rock Cafe Licensing Corp. v. Concession Services, Inc.*, 955 F.2d 1143 (7th Cir. 1992); *Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259 (9th Cir. 1996); *Lockheed Martin Corp. v. Network Solutions, Inc.,* 194 F.3d 980 (9th Cir. 1999*); Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc*., 658 F.3d 936 (9th Cir. 2011); Gucci *America, Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228 (S.D. N.Y. 2010); *Coach, Inc. v. Gata Corp.,* No. 10-cv 141-LM, 2011 WL 2358671 (D. N.H. June 9, 2011); *Louis Vuitton Malletier v. Texas International Partnership, et al.,* No. 4:10-cv-02821-GHM, Order (S.D. Tex. November 18, 2011); *Louis Vuitton Malletier v. Eisenhauer Road Flea Market, Inc., et al.,* No. 5:11-cv-00124- HLH, Order Regarding Defendants' Motion for Summary Judgment (W.D. Tex. December 19, 2011).

## PROPOSED JURY INSTRUCTION NO. 14

### **Contributory Trademark Infringement Element 2: Control**

Coach must prove that Defendant Peter J. Sapatis had the ability, power or right to, or did in fact exercise control over the means of any Counterfeiting Vendors' infringement at the Flea Market. In this case, the means of the Counterfeiting Vendors' infringement is the retail space that they rented from the Flea Market.

The control element is satisfied by proof, by a preponderance of the evidence, that Defendant Peter J. Sapatis possessed the right, ability or power to control either (i) the use of the physical retail space rented at the Flea Market, or (ii) the activities that any of the Counterfeiting Vendors could engage in while occupying such space at the Flea Market. Thus, you may find that Defendant Peter J. Sapatis had the requisite control if he had the right, ability or power to remove any of the Counterfeiting Vendors from the Flea Market, whether by terminating their rental agreement, deciding not to rent to them anymore, or evicting them. In addition, you may find that Defendant Peter J. Sapatis had the requisite control if, through the Flea Market's rules, rental agreements and any other documents signed by the Counterfeiting Vendors, Peter J. Sapatis had a significant say in permitting or prohibiting the Counterfeiting Vendors' activities.

For purposes of your analysis, the relevant question is not whether Defendant Peter J. Sapatis actually exercised such control, but whether he had the right, ability or power to exercise such control. Hence, if you find that Defendant Peter J. Sapatis possessed the right, ability or power to control either (i) the use of the physical retail space rented at the Flea Market, or (ii) the activities that any of the Counterfeiting Vendors could engage in while occupying such space at the Flea Market, then you must find that Coach has proven the control element against Peter J. Sapatis. If you find that Coach has proven that Defendant Peter J. Sapatis had both the requisite

control and knowledge, then you must find that Peter J. Sapatis is liable to Coach for contributory trademark infringement.

**Authorities:**   *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.,* 658 F.3d 936 (9th Cir. 2011); *Lockheed Martin Corp. v. Network Solutions, Inc.,* 194 F.3d 980 (9th Cir. 1999); *Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259 (9th Cir. 1996); *Tiffany (NJ), Inc. v. eBay, Inc.*, 600 F.3d 93, 104 (2d Cir. 2010); *Coach, Inc. v. Sapatis*, 12-CV-506-PB, 2014 WL 347712 (D.N.H. Jan. 31, 2014); Coach*, Inc. v. Gata Corp.*, No. 10-CV-141-LM, 2011 WL 2358671, at *7 (D.N.H. June 9, 2011); *Gucci America, Inc. v. Frontline Processing Corp.,* 721 F. Supp. 2d 228 (S.D.N.Y. 2010); *Louis Vuitton Malletier v. Texas International Partnership,* et al., No. 4:10-cv-02821-GHM, Order (S.D. Tex. Nov. 18, 2011).

**PROPOSED JURY INSTRUCTION NO. 15**

**Contributory Trademark Infringement – Alaina E. Paul**

I will now instruct you as to Coach's claim for contributory trademark infringement against Alaina E. Paul.

In order to hold Defendant Alaina E. Paul liable for contributory trademark infringement, Coach must prove two things, both by a preponderance of the evidence, that: (1) Alaina E. Paul provided services including but not limited to space, utilities, parking, advertising and customers to any vendor at the Flea Market that she knew or had reason to know was selling or offering for sale products bearing counterfeits of any of Coach's trademarks (the "Counterfeiting Vendor(s)"); and (2) Alaina E. Paul had the ability, power or right to exercise control over the means of any Counterfeiting Vendors' infringing activities at the Flea Market.  I will refer to the first factor as the "knowledge" factor and the second as the "control" factor, and will now explain both of those factors in more detail.

**Authorities:**   *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 500 (6th Cir. 2013); *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1249 (10th Cir. 2013); *Hard Rock Cafe Licensing Corp. v. Concession Services, Inc*., 955 F.2d 1143 (7th Cir. 1992); *Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259 (9th Cir. 1996); *Lockheed Martin Corp. v. Network Solutions, Inc.,* 194 F.3d 980 (9th Cir. 1999); *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc*., 658 F.3d 936 (9th Cir. 2011); *Coach, Inc. v.* Sapatis, No. 12-CV-506-PB 2014 WL 347712 (D.N.H. Jan. 31, 2014); Gucci *America, Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228 (S.D. N.Y. 2010); *Coach, Inc. v. Gata Corp.,* No. 10-cv 141-LM, 2011 WL 2358671 (D. N.H. June 9, 2011); *Louis Vuitton Malletier v. Texas International Partnership, et al.,* No. 4:10-cv-02821-GHM, Order (S.D. Tex. November 18, 2011); *Louis Vuitton Malletier v. Eisenhauer Road Flea Market, Inc., et al.,* No. 5:11-cv-00124- HLH, Order Regarding Defendants' Motion for Summary Judgment (W.D. Tex. December 19, 2011).

## PROPOSED JURY INSTRUCTION NO. 16

### **Contributory Trademark Infringement Element 1: Knowledge Factor**

Coach must prove that Defendant Alaina E. Paul provided services including but not limited to space, utilities, parking, advertising and customers to any vendor at the Flea Market that she knew or had reason to know was selling or offering for sale products bearing counterfeits of any of Coach's trademarks.  Coach must prove that Defendant Alaina E. Paul had: (a) knowledge of any Counterfeiting Vendors' sale or offer for sale of products bearing counterfeits of any of Coach's trademarks ("Counterfeit Goods"); (b) had reason to know of such sale or offer for sale; or (c) was willfully blind to such sale or offer for sale.

Defendant Alaina E. Paul's knowledge of any Counterfeiting Vendors' sale or offer for sale of Counterfeit Goods may be shown by proof of any of the following: actual knowledge of, constructive knowledge of, or willful blindness by Defendant Alaina E. Paul to any Counterfeiting Vendors' sale or offer for sale of Counterfeit Goods.  These terms are defined respectively as follows.

Actual knowledge exists where it can be shown by Alaina E. Paul's conduct, statements or observations that she had specific knowledge of any Counterfeiting Vendor who was selling or offering for sale Counterfeit Goods.

Constructive knowledge exists where a reasonably prudent person in the position of Alaina E. Paul would have, or should have, known of any Counterfeiting Vendors' sale or offer for sale of Counterfeit Goods.  Therefore, in considering whether Defendant Alaina E. Paul had constructive knowledge, you must determine what a reasonably prudent person in her position would have understood in light of all the facts and circumstances.

24

Willful blindness exists where it can be shown that Defendant Alaina E. Paul had reason to suspect that any of the Counterfeiting Vendors were selling or offering for sale Counterfeit Goods, but Alaina E. Paul failed to genuinely investigate, or looked the other way to avoid seeing such activity.

If you find that Defendant Alaina E. Paul had actual knowledge, constructive knowledge or was willfully blind towards any of the Counterfeiting Vendors' sales or offers for sale of Counterfeit Goods, then you must find that Coach has proved the knowledge element of its claim against Alaina E. Paul.

**Authorities:**   *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 (1982); *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 500 (6th Cir. 2013); *Hard Rock Cafe Licensing Corp. v. Concession Services, Inc.*, 955 F.2d 1143 (7th Cir. 1992); *Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259 (9th Cir. 1996); *Lockheed Martin Corp. v. Network Solutions, Inc.,* 194 F.3d 980 (9th Cir. 1999*); Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936 (9th Cir. 2011); Gucci *America, Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228 (S.D. N.Y. 2010); *Coach, Inc. v. Gata Corp.,* No. 10-cv 141-LM, 2011 WL 2358671 (D. N.H. June 9, 2011); *Louis Vuitton Malletier v. Texas International Partnership, et al.,* No. 4:10-cv-02821-GHM, Order (S.D. Tex. November 18, 2011); *Louis Vuitton Malletier v. Eisenhauer Road Flea Market, Inc., et al.,* No. 5:11-cv-00124- HLH, Order Regarding Defendants' Motion for Summary Judgment (W.D. Tex. December 19, 2011).

**PROPOSED JURY INSTRUCTION NO. 17**

**<u>Contributory Trademark Infringement Element 2: Control</u>**

Coach must prove that Defendant Alaina E. Paul had the ability, power or right to, or did in fact exercise control over the means of any Counterfeiting Vendors' infringement at the Flea Market.  In this case, the means of the Counterfeiting Vendors' infringement is the retail space that they rented from the Flea Market.

The control element is satisfied by proof, by a preponderance of the evidence, that Defendant Alaina E. Paul possessed the right, ability or power to control either (i) the use of the physical retail space rented at the Flea Market, or (ii) the activities that any of the Counterfeiting Vendors could engage in while occupying such space at the Flea Market.  Thus, you may find that Defendant Alaina E. Paul had the requisite control if she had the right, ability or power to remove any of the Counterfeiting Vendors from the Flea Market, whether by terminating their rental agreement, deciding not to rent to them anymore, or evicting them.  In addition, you may find that Defendant Alaina E. Paul had the requisite control if, through the Flea Market's rules, rental agreements and any other documents signed by the Counterfeiting Vendors, Alaina E. Paul had a significant say in permitting or prohibiting the Counterfeiting Vendors' activities.

For purposes of your analysis, the relevant question is not whether Defendant Alaina E. Paul actually exercised such control, but whether she had the right, ability or power to exercise such control.  Hence, if you find that Defendant Alaina E. Paul possessed the right, ability or power to control either (i) the use of the physical retail space rented at the Flea Market, or (ii) the activities that any of the Counterfeiting Vendors could engage in while occupying such space at the Flea Market, then you must find that Coach has proven the control element against Alaina E. Paul.  If you find that Coach has proven that Defendant Alaina E. Paul had both the requisite

control and knowledge, then you must find that Alaina E. Paul is liable to Coach for contributory

trademark infringement.

**Authorities:**   *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.,* 658 F.3d 936 (9th Cir. 2011); *Lockheed Martin Corp. v. Network Solutions, Inc.,* 194 F.3d 980 (9th Cir. 1999); *Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259 (9th Cir. 1996); *Tiffany (NJ), Inc. v. eBay, Inc.*, 600 F.3d 93, 104 (2d Cir. 2010); *Coach, Inc. v. Sapatis*, 12-CV-506-PB, 2014 WL 347712 (D.N.H. Jan. 31, 2014); Coach*, Inc. v. Gata Corp.*, No. 10-CV-141-LM, 2011 WL 2358671, at *7 (D.N.H. June 9, 2011); *Gucci America, Inc. v. Frontline Processing Corp.,* 721 F. Supp. 2d 228 (S.D.N.Y. 2010); *Louis Vuitton Malletier v. Texas International Partnership,* et al., No. 4:10-cv-02821-GHM, Order (S.D. Tex. Nov. 18, 2011).

## PROPOSED JURY INSTRUCTION NO. 18

### Personal Liability of Alaina E. Paul

As to the individual Defendant Alaina E. Paul, she may also be personally liable for the contributory trademark infringement of Defendant TABA Enterprises, LLC pursuant to well settled law that "a corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity, is personally liable for such infringement without regard to piercing of the corporate veil."

**Authorities:**   New Hampshire Revised Statutes § 304-C:23; *Mbahaba v. Morgan*, 44 A.3d 472, 476 (N.H. 2012); *Babbit Electronics, Inc. v. Dynascan Corporation*, 38 F. 3d 1161, 1184 (11th Cir. 1994), *citing Selchow & Righter Co. v. Goldtex Corp*., 612 F. Supp. 19 (S.D. Fla. 1985); *see also Chanel, Inc. v. Italian Activewear of Florida, Inc*., 931 F. 2d at 1477 ("If an individual actively and knowingly caused the infringement, he is personally liable.") (11th Cir. 1991); *Wilden Pump & Eng'g Co. v. Pressed & Welded Products Co.*, 655 F.2d 984, 990 (9th Cir. 1981)*Levi Strauss & Co. v. Diaz*, 778 F. Supp. 1206, 1207 (S.D. Fla. 1991) (Where record reflected that individual defendant controlled the corporate defendant, and personally negotiated all terms and committed all acts of infringement, the individual defendant "cannot hide behind the corporate shield, and is personally liable for all infringing acts which he has committed.").

## PROPOSED JURY INSTRUCTION NO. 19

### <u>Vicarious Liability of Alaina E. Paul</u>

If you find Peter J. Sapatis personally liable to Coach for contributory trademark infringement, then you should also consider whether Alaina E. Paul should be found vicariously liable to Coach on the theory that Peter J. Sapatis was her agent.

An agent is an individual who performs services for another under an express or implied agreement and who is subject to the other's control or right to control the manner and means of performing the services.  The individual who controls or has the right to control the agent's manner and means of performing the services is called a "principal."  In order to find Alaina E. Paul vicariously liable for the acts of Peter J. Sapatis, you must first determine whether an agency relationship existed between Alaina E. Paul and Peter J. Sapatis.

An agency relationship requires: (1) authorization from the principal that the agent shall act for him or her; (2) the agent's consent to so act; and (3) the understanding that the principal is to exert some control over the agent's actions.  Authority may be found in two forms: actual and apparent.  The granting of actual authority and consent to act with such authority may be either express or implied from the parties' conduct or other evidence of intent.  Control by the principal does not mean actual or physical control at every moment, but the principal manifesting some continuous prescription over the agent's actions.  A finding of apparent authority incorporates the same three factual elements listed above and exists where the principal so conducts itself as to cause a third party to reasonably believe that the agent is authorized to act.

If you find that Coach has proven that Alaina E. Paul exercised the requisite actual or apparent authority over Peter J. Sapatis, then you must find that Alaina E. Paul is vicariously liable for the actions of Peter J. Sapatis.

**Authorities:**   *Dent v. Exeter Hosp., Inc.*, 931 A.2d 1203, 1209 (N.H. 2007); *VanDeMark v. Mcdonald's Corp.*, 904 A.2d 627, 634 (N.H. 2006); *Mulligan v. Choice Mortg. Corp. USA*, 1998 U.S. Dist. LEXIS 13248, at *25 (D.N.H. Aug. 1, 1998); *Restatement of the Law—Agency, Restatement* (Third) of Agency (2006), § 1.01, et. seq.

## PROPOSED JURY INSTRUCTION NO. 20

### Piercing the Corporate Veil

If you find TABA Enterprises, LLC liable to Coach for contributory trademark infringement, then you should also consider whether TABA's sole owner Alaina E. Paul should also be found liable to Coach on a veil piercing theory.

Piercing the corporate veil or lifting the corporate veil is a legal decision to treat the rights or duties of a corporation as the rights or liabilities of the owners, in instances where the owners have used the company to promote an injustice or fraud upon the plaintiff. In determining whether Defendant Alaina E. Paul used TABA Enterprises, LLC to promote an injustice or fraud upon Coach, you may consider the following factors: (1) whether TABA Enterprises, LLC has been sufficiently capitalized (*i.e.*, whether TABA Enterprises, LLC carries on business with substantial capital and is likely to have sufficient assets available to meet its debts) (2) whether TABA Enterprises, LLC has misled others as to its corporate assets, (3) whether TABA Enterprises, LLC's assets have been intermingled with Alaina E. Paul's assets, and (4) whether TABA Enterprises, LLC's corporate formalities have been observed. Corporate formalities may include such activities as issuing shares, holding shareholder or directors' meetings, and maintaining corporate books and records.

**Authorities:**  *Terren v. Butler*, 597 A.2d 69, 72 (N.H. 1991); *GE Mobile Water, Inc. v. Red Desert Reclamation, LLC*, 13-CV-357-PB, 2014 WL 1056938, at *7-*8 (D.N.H. Mar. 17, 2014)*; Nordica S.p.A. v. Icon Health & Fitness, Inc.*, 06-CV-451-PB, 2009 WL 2462570, at *4 (D.N.H. Aug. 11, 2009); 1 Fletcher Cyc. Corp. §§ 41.33, 33, 50.

## PROPOSED JURY INSTRUCTION NO. 21

### **Statutory Damages**

If you find that TABA Enterprises, LLC, or along with one or more of the other Defendants, including Peter J. Sapatis and Alaina E. Paul are liable to Coach for contributory trademark infringement, you must consider the damages which Coach is entitled to recover as a result.  Under the federal trademark infringement laws, Coach is entitled to recover an award of statutory damages for each of its trademarks that were counterfeited on any of the goods that were sold, offered for sale or distributed by the Counterfeiting Vendors at the Flea Market.

In order to recover statutory damages, Coach need not prove any actual damages it suffered or the profits that Defendants earned from the sale of counterfeit products.  Rather, the purpose of awarding statutory damages for trademark infringement is to deter Defendants and other potential infringers from engaging in similar conduct in the future, regardless of the quantity of their infringing sales.

In determining the amount that Coach is to be awarded, you must first determine which trademarks, if any, appeared on the Counterfeit Goods that were sold or offered for sale by Defendants' Counterfeiting Vendors (the "Counterfeit Marks").  Second, for each of the Counterfeited Marks, you must then determine the number of different types of goods upon which the Counterfeited Mark appears.

Lastly, you should award no less than $1,000 and up to $2,000,000 per Counterfeited Mark per type of goods sold, offered for sale or distributed by the Counterfeiting Vendors at the Flea Market, for the Defendants' trademark infringement.

**Authorities:**   15 U.S.C. §§ 1117(c); *Louis Vuitton Malletier v. Eisenhauer Road Flea Market, Inc.,* et al., No. 5:11-cv-00124-HLH, Court's Charge/Instructions to the Jury (W.D. Texas, January 12, 2012);   *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc*., 658 F.3d2d 1197 (E.D. Mo. 2002); *Cartier Int'l B.V. v. Ben-*

*Menachem,* No. 06 Civ. 3917, 2008 WL 64005 (S.D.N.Y. Jan. 3, 2008).

**PROPOSED JURY INSTRUCTION NO. 22**

**Trademark Infringement Statutory Damages Factors to Consider**

You have broad discretion in determining the amount of statutory damages to award to Coach per Counterfeited Mark per type of goods sold, offered for sale or distributed. For example, you should make a statutory damage award even if you find that Coach has not suffered any actual damages, or was not able to quantify any harm that it did suffer. Likewise, you have the discretion to make a substantial statutory damages award in order to deter Defendants, other landlords, or other contributory trademark infringers from committing similar conduct to what occurred in this case.

In order to help you determine the amount of statutory damages that should be awarded in this case, there are several factors that you should consider, including the following:

1.      the degree of willfulness or the culpability of the defendants;

2.      the Defendants' cooperation or lack of cooperation in providing information about infringing activity;

3.      the profits realized by the Defendants as a result of the infringing activity;

4.      the value of the trademarks that were infringed;

5.      the revenues, if any, lost by Coach as a proximate result of the Defendants' conduct; and

6.      the need to deter the defendants and other landlords similarly situated from engaging in contributory trademark infringement.

**Authority:**      *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 1315 F. Supp. 2d 511 (S.D.N.Y. 2004).

**PROPOSED JURY INSTRUCTION NO. 23**

**<u>Preliminary Instruction - Copyright Infringement</u>**

Coach also seeks damages against the Defendants for infringing copyrights that Coach owns for the designs appearing on its products.   Copyrights can be held in pictoral or graphic works, including works of fine, graphic, and applied art, photographs, prints and art reproductions.  Copyright is the exclusive right to copy.  The owner of a copyright generally has the right to exclude any other person from reproducing, preparing derivative works, distributing, displaying or using the work covered by the copyright for a specific period of time.  To succeed on its claims, Coach must prove two elements:

    1)  ownership of a valid copyright, and

    2)  copying of constituent elements of the work that are original.

**Authority:**    *Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory,* 689 F.3d 29, 39 (1st Cir. 2012), *cert. denied,* 133 S.Ct. 1315 (2013); *Situation Mgmt. Sys., Inc. v. ASP. Consulting LLC*, 560 F.3d 53, 58 (1st Cir.2009); *Roy v. NH Dep't of Corr., Com'r,* 13-CV-438-PB, 2014 WL 29160 (D.N.H. Jan. 3, 2014); 9th Cir. Model Jury Instruction, No. 17.1; *see also Habersham Plantation Corp. v. Molyneux, et. al.*, Case No. 10-CV-61526-WPD, Dkt. 322.

## PROPOSED JURY INSTRUCTION NO. 24

### Copyright Infringement -Validity

Coach's registration of its copyrights before or within five years after first publication of the work means that Coach is entitled to a rebuttable presumption that its copyrights are valid.   Defendants may rebut this presumption with evidence that the copyrights are invalid.

**Authority**:   *CMM Cable Rep, Inc. v. Ocean Coast Properties, Inc.*, 97 F.3d 1504, 1513 (1st Cir. 1996); *Brown v. Latin Am. Music Co.*, 498 F.3d 18, 23 (1st Cir. 2007) (stating "a registration within five years of first publication is accompanied by a presumption of validity of the copyright").

**PROPOSED JURY INSTRUCTION NO. 25**

**<u>Copyright Infringement – Elements and Burden of Proof</u>**

Coach has sued Defendants for contributory copyright infringement. In order to find the Defendants liable for contributory copyright infringement, you must first determine whether or not any of the designs appearing on any products sold or offered for sale by any vendors at the Flea Market infringed any of Coach's copyrights.

As to the issue of copying, to establish actual copying, Coach must prove both factual copying and "substantial similarity" between the infringing and copyrighted works. First, Coach must prove that, as a factual matter, the vendors at the Flea Market copied Coach's copyrighted designs. Second, to prove "substantial similarity," Coach must prove that the copying was so flagrantly extreme that the infringing and copyrighted works were, for all intents and purposes are "substantially similar." Under this rubric, two works will be deemed "substantially similar" if a reasonable ordinary observer, on examining both, would be disposed to overlook the disparities between the works, and regard their aesthetic appeal as the same.

You may infer that vendors at the Flea Market copied Coach's work if they or their suppliers had a reasonable opportunity to view Coach's work or had access to the work before creating or introducing their own work, and that the two works are so similar that a reasonable person would conclude that vendors at the Flea Market took protected expression from Coach's work.

You may also infer that vendors at the Flea Market copied Coach's work if the similarities between the two works can be explained only by copying, rather than by coincidence, independent creation, or the existence of a common source for both works.

If Coach cannot demonstrate the Vendors' access, it may, nonetheless, establish copying by demonstrating that Coach's works and the vendors' works are strikingly similar.  Striking similarity exists where the proof of similarity in appearance of the protected expression is so striking that the possibilities of independent creation, coincidence and prior common sources are, as a practical matter, precluded.

In determining whether Coach has proved copying, you may consider evidence that the vendors' work was created independently of Coach's copyrighted work, if any.

**Authorities:**    Seventh Circuit Pattern Jury Instructions 12.5.1 (modified)); *Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 49-50 (1st Cir. 2012) *cert. denied*, 133 S. Ct. 1315, 185 L. Ed. 2d 195 (U.S. 2013); *Coquico, Inc. v. Rodriguez-Miranda*, 562 F.3d 62, 67-68 (1st Cir. 2009); *Habersham Plantation Corp. v. Molyneux*, et. al., Case No. 10-cv-61526-WPD, Dkt. 322; *Habersham Plantation Corp. v. Art & Frame Direct, Inc., et. al*., Case No. 10-cv-61532, Dkt. 220.

**PROPOSED JURY INSTRUCTION NO. 26**

**<u>Contributory Copyright Infringement – TABA Enterprises, LLC</u>**

Coach has brought a claim for contributory copyright infringement against all of the Defendants.  In other words, Coach claims that, either through Defendants' actions or inactions, Defendants contributed to the infringement of Coach's copyrights that is alleged to have taken place by vendors at the Flea Market.  I will instruct you as to Coach's claim for contributory copyright infringement against TABA Enterprises, LLC.

Coach claims that Defendant TABA Enterprises, LLC either induced the vendors to infringe Coach's copyrights or contributed to the vendors' infringement of Coach's copyrights. To succeed on this claim, Coach must prove each of the following things:

1. Vendors at the Flea Market, or any one of them, infringed any of Coach's copyrights, as defined in the instructions I have already given you;

2. Defendant TABA Enterprises, LLC induced, caused, or encouraged vendors at the Flea Market to infringe Coach's copyrights or contributed in a significant way to vendors' infringement of Coach's copyrights; and

3. Defendant TABA Enterprises, LLC knew of the infringing activity, or strongly suspected or should have known of the infringing activity but took steps to avoid knowing about the infringing activity.

I will now explain some of these requirements to you in more detail.

**Authority:**     Seventh Circuit Pattern Jury Instruction 12.6.2 (modified)

**PROPOSED JURY INSTRUCTION NO. 27**

## Contributory Copyright Infringement – Knowledge

Knowledge of the infringing activity may be shown either by actual knowledge, constructive knowledge, or willful blindness.  I will now explain each of these in more detail.

Actual knowledge exists where it can be shown by the conduct, statements or observations of its employees or agents that Defendant TABA Enterprises, LLC had specific knowledge of any vendor who was selling or offering for sale products that infringed Coach's copyrighted designs, as I have explained to you above.

Constructive knowledge exists where a reasonably prudent landlord, including its employees or agents, would have or should have known that vendors were selling products that infringed Coach's copyrighted designs.  Therefore, in considering whether Defendant TABA Enterprises, LLC had constructive knowledge, you must determine what a reasonably prudent landlord, including its employees or agents, would have understood in light of all the facts and circumstances.

Willful blindness exists where it can be shown that Defendant TABA Enterprises, LLC, by or through its employees or agents, had reason to suspect that any of its vendors were selling or offering for sale products that infringed Coach's copyrights, but that TABA Enterprises, LLC failed to genuinely investigate, or looked the other way to avoid seeing such activity.

If you find that Defendant TABA Enterprises, LLC, by or through its employees or agents, had actual knowledge, constructive knowledge or willful blindness of any of its vendors' sales or offers for sale of products that infringed Coach's copyrights, then you must find that Coach has proved the knowledge element of its claim against TABA Enterprises, LLC

**Authorities**:   Seventh Circuit Pattern Jury Instruction 12.6.2; *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir. 1990); *Hard Rock Cafe*

*Licensing Corp. v. Concession Services, Inc.,* 955 F.2d 1143 (7th Cir. 1992); *Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259 (9th Cir. 1996); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1020 (9th Cir. 2001); *Coach, Inc. v. Sapatis*, 12-CV-506-PB, 2014 WL 347712, at *9 (D.N.H. Jan. 31, 2014).

## PROPOSED JURY INSTRUCTION NO. 28

## <u>Contributory Copyright Infringement - Contribution</u>

In deciding whether Defendants contributed to the infringing activities of vendors at the Flea Market, you should consider the following: where a person or entity knowingly provides the site or facilities for another's infringing activities, that person or entity materially contributes to the other's infringing activities.

If you find that Coach has proved that Defendant TABA Enterprises, LLC had knowledge, either actual, constructive or through willful blindness, and materially contributed to, its vendors infringing activities, then you must find that TABA Enterprises, LLC is liable to Coach for contributory copyright infringement.

**Authorities:**   *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir. 1990); *Hard Rock Cafe Licensing Corp. v. Concession Services, Inc.,* 955 F.2d 1143 (7th Cir. 1992); *Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259 (9th Cir. 1996); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1020 (9th Cir. 2001); *Coach, Inc. v. Sapatis*, 12-CV-506-PB, 2014 WL 347712, at *9 (D.N.H. Jan. 31, 2014).

**PROPOSED JURY INSTRUCTION NO. 29**

**<u>Contributory Copyright Infringement – Peter J. Sapatis</u>**

I will now instruct you as to Coach's claim for contributory copyright infringement against Peter J. Sapatis.

Coach claims that Defendant Peter J. Sapatis either induced the vendors to infringe Coach's copyrights or contributed to the vendors' infringement of Coach's copyrights. To succeed on this claim, Coach must prove each of the following things:

1.  Vendors at the Flea Market, or any one of them, infringed any of Coach's copyrights, as defined in the instructions I have already given you;

2.  Defendant Peter J. Sapatis induced, caused, or encouraged vendors at the Flea Market to infringe Coach's copyrights or contributed in a significant way to vendors' infringement of Coach's copyrights; and

3.  Defendant Peter J. Sapatis knew of the infringing activity, or strongly suspected or should have known of the infringing activity but took steps to avoid knowing about the infringing activity.

I will now explain some of these requirements to you in more detail.

**Authority:**     Seventh Circuit Pattern Jury Instruction 12.6.2 (modified)

**PROPOSED JURY INSTRUCTION NO. 30**

**<u>Contributory Copyright Infringement – Knowledge</u>**

Knowledge of the infringing activity may be shown either by actual knowledge, constructive knowledge, or willful blindness.  I will now explain each of these in more detail.

Actual knowledge exists where it can be shown by Defendant Peter J. Sapatis's conduct, statements or observations that he had specific knowledge of any vendor who was selling or offering for sale products that infringed Coach's copyrighted designs, as I have explained to you above.

Constructive knowledge exists where a reasonably prudent person in the position of Peter J. Sapatis would have or should have known that vendors were selling products that infringed Coach's copyrighted designs.  Therefore, in considering whether Defendant Peter J. Sapatis had constructive knowledge, you must determine what a reasonably prudent person in the position of Peter J. Sapatis would have understood in light of all the facts and circumstances.

Willful blindness exists where it can be shown that Defendant Peter J. Sapatis had reason to suspect that any of the vendors were selling or offering for sale products that infringed Coach's copyrights, but that Peter J. Sapatis failed to genuinely investigate, or looked the other way to avoid seeing such activity.

If you find that Defendant Peter J. Sapatis had actual knowledge, constructive knowledge or willful blindness of any of the vendors' sales or offers for sale of products that infringed Coach's copyrights, then you must find that Coach has proved the knowledge element of its claim against Peter J. Sapatis

**Authorities**:   Seventh Circuit Pattern Jury Instruction 12.6.2; *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir. 1990); *Hard Rock Cafe Licensing Corp. v. Concession Services, Inc.*, 955 F.2d 1143 (7th Cir. 1992); *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996); *A&M*

*Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1020 (9th Cir. 2001); *Coach, Inc. v. Sapatis*, 12-CV-506-PB, 2014 WL 347712, at *9 (D.N.H. Jan. 31, 2014).

## PROPOSED JURY INSTRUCTION NO. 31

### Contributory Copyright Infringement - Contribution

In deciding whether Peter J. Sapatis contributed to the infringing activities of vendors at the Flea Market, you should consider the following: where a person or entity knowingly provides the site or facilities for another's infringing activities, that person or entity materially contributes to the other's infringing activities.

If you find that Coach has proved that Defendant Peter J. Sapatis had knowledge, either actual, constructive or through willful blindness, and materially contributed to, its vendors infringing activities, then you must find that Peter J. Sapatis is liable to Coach for contributory copyright infringement.

**Authorities:**   *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir. 1990); *Hard Rock Cafe Licensing Corp. v. Concession Services, Inc.,* 955 F.2d 1143 (7th Cir. 1992); *Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259 (9th Cir. 1996); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1020 (9th Cir. 2001); *Coach, Inc. v. Sapatis*, 12-CV-506-PB, 2014 WL 347712, at *9 (D.N.H. Jan. 31, 2014).

**PROPOSED JURY INSTRUCTION NO. 32**

**<u>Contributory Copyright Infringement – Alaina E. Paul</u>**

I will now instruct you as to Coach's claim for contributory copyright infringement against Alaina E. Paul.

Coach claims that Defendant Alaina E. Paul either induced the vendors to infringe Coach's copyrights or contributed to the vendors' infringement of Coach's copyrights. To succeed on this claim, Coach must prove each of the following things:

1. Vendors at the Flea Market, or any one of them, infringed any of Coach's copyrights, as defined in the instructions I have already given you;

2. Defendant Alaina E. Paul induced, caused, or encouraged vendors at the Flea Market to infringe Coach's copyrights or contributed in a significant way to vendors' infringement of Coach's copyrights; and

3. Defendant Alaina E. Paul knew of the infringing activity, or strongly suspected or should have known of the infringing activity but took steps to avoid knowing about the infringing activity.

I will now explain some of these requirements to you in more detail.

**Authority:**     Seventh Circuit Pattern Jury Instruction 12.6.2 (modified)

**PROPOSED JURY INSTRUCTION NO. 33**

## <u>Contributory Copyright Infringement – Knowledge</u>

Knowledge of the infringing activity may be shown either by actual knowledge, constructive knowledge, or willful blindness.  I will now explain each of these in more detail.

Actual knowledge exists where it can be shown by Alaina E. Paul's conduct, statements or observations that she had specific knowledge of any vendor who was selling or offering for sale products that infringed Coach's copyrighted designs, as I have explained to you above.

Constructive knowledge exists where a reasonably prudent person in the position of Alaina E. Paul would have or should have known that vendors were selling products that infringed Coach's copyrighted designs.  Therefore, in considering whether Defendant Alaina E. Paul had constructive knowledge, you must determine what a reasonably prudent person in the position of Alaina E. Paul would have understood in light of all the facts and circumstances.

Willful blindness exists where it can be shown that Defendant Alaina E. Paul had reason to suspect that any of the vendors were selling or offering for sale products that infringed Coach's copyrights, but that Alaina E. Paul failed to genuinely investigate, or looked the other way to avoid seeing such activity.

If you find that Defendant Alaina E. Paul had actual knowledge, constructive knowledge or willful blindness of any of the vendors' sales or offers for sale of products that infringed Coach's copyrights, then you must find that Coach has proved the knowledge element of its claim against Alaina E. Paul.

**Authorities**:   Seventh Circuit Pattern Jury Instruction 12.6.2; *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir. 1990); *Hard Rock Cafe Licensing Corp. v. Concession Services, Inc.,* 955 F.2d 1143 (7th Cir. 1992); *Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259 (9th Cir. 1996); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1020 (9th Cir. 2001); *Coach, Inc. v. Sapatis*, 12-CV-506-PB, 2014 WL 347712, at *9 (D.N.H. Jan. 31, 2014).

**PROPOSED JURY INSTRUCTION NO. 34**

**<u>Contributory Copyright Infringement - Contribution</u>**

In deciding whether Alaina E. Paul contributed to the infringing activities of vendors at the Flea Market, you should consider the following: where a person or entity knowingly provides the site or facilities for another's infringing activities, that person or entity materially contributes to the other's infringing activities.

If you find that Coach has proved that Defendant Alaina E. Paul had knowledge, either actual, constructive or through willful blindness, and materially contributed to, its vendors infringing activities, then you must find that Alaina E. Paul is liable to Coach for contributory copyright infringement.

**Authorities:**    *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir. 1990); *Hard Rock Cafe Licensing Corp. v. Concession Services, Inc.,* 955 F.2d 1143 (7th Cir. 1992); *Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259 (9th Cir. 1996); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1020 (9th Cir. 2001); *Coach, Inc. v. Sapatis*, 12-CV-506-PB, 2014 WL 347712, at *9 (D.N.H. Jan. 31, 2014).

## PROPOSED JURY INSTRUCTION NO. 35

### <u>Personal Liability of Alaina E. Paul</u>

As to the individual Defendant Alaina E. Paul, she may also be personally liable for the contributory copyright infringement of Defendant TABA Enterprises, LLC pursuant to well settled law that "a corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity, is personally liable for such infringement without regard to piercing of the corporate veil."

**Authorities:**  New Hampshire Revised Statutes § 304-C:23; *Mbahaba v. Morgan*, 44 A.3d 472, 476 (N.H. 2012); *Babbit Electronics, Inc. v. Dynascan Corporation*, 38 F. 3d 1161, 1184 (11th Cir. 1994), *citing Selchow & Righter Co. v. Goldtex Corp*., 612 F. Supp. 19 (S.D. Fla. 1985); *see also Chanel, Inc. v. Italian Activewear of Florida, Inc*., 931 F. 2d at 1477 ("If an individual actively and knowingly caused the infringement, he is personally liable.") (11th Cir. 1991); *Levi Strauss & Co. v. Diaz*, 778 F. Supp. 1206, 1207 (S.D. Fla. 1991) (Where record reflected that individual defendant controlled the corporate defendant, and personally negotiated all terms and committed all acts of infringement, the individual defendant "cannot hide behind the corporate shield, and is personally liable for all infringing acts which he has committed.").

## PROPOSED JURY INSTRUCTION NO. 36

### <u>Vicarious Liability of Alaina E. Paul</u>

If you find Peter J. Sapatis individually liable to Coach for contributory copyright infringement, then you should also consider whether Alaina E. Paul should be found vicariously liable to Coach on the theory that Peter J. Sapatis was her agent.

An agent is an individual who performs services for another under an express or implied agreement and who is subject to the other's control or right to control the manner and means of performing the services. The individual who controls or has the right to control the agent's manner and means of performing the services is called a "principal." In order to find Alaina E. Paul vicariously liable for the acts of Peter J. Sapatis, you must first determine whether an agency relationship existed between Alaina E. Paul and Peter J. Sapatis.

An agency relationship requires: (1) authorization from the principal that the agent shall act for him or her; (2) the agent's consent to so act; and (3) the understanding that the principal is to exert some control over the agent's actions. Authority may be found in two forms: actual or apparent. The granting of actual authority and consent to act with such authority may be either express or implied from the parties' conduct or other evidence of intent. Control by the principal does not mean actual or physical control at every moment, but the principal manifesting some continuous prescription over the agent's actions. A finding of apparent authority incorporates the three factual elements listed above and exists where the principal so conducts itself as to cause a third party to reasonably believe that the agent is authorized to act.

If you find that Coach has proven that Alaina E. Paul exercised the requisite actual or apparent authority over Peter J. Sapatis, then you must find that Alaina E. Paul is vicariously liable for the actions of Peter J. Sapatis.

**Authorities:**   *Dent v. Exeter Hosp., Inc.*, 931 A.2d 1203, 1209 (N.H. 2007); *VanDeMark v. Mcdonald's Corp.*, 904 A.2d 627, 634 (N.H. 2006); *Mulligan v. Choice Mortg. Corp. USA*, 1998 U.S. Dist. LEXIS 13248, at *25 (D.N.H. Aug. 1, 1998); *Restatement of the Law—Agency, Restatement* (Third) of Agency (2006), § 1.01, et. seq.

## PROPOSED JURY INSTRUCTION NO. 37

### Piercing the Corporate Veil

If you find TABA Enterprises, LLC liable to Coach for contributory copyright infringement, then you should also consider whether or not TABA's sole owner Alaina E. Paul should also be found liable to Coach on a veil piercing theory.

Piercing the corporate veil or lifting the corporate veil is a legal decision to treat the rights or duties of a corporation as the rights or liabilities of its owners, in instances where the owners have used the company to promote an injustice or fraud upon the plaintiff.   In determining whether Defendant Alaina E. Paul used TABA Enterprises, LLC to promote an injustice or fraud upon Coach, you may consider the following factors: (1) whether TABA Enterprises, LLC has been sufficiently capitalized (*i.e.*, whether TABA Enterprises, LLC carries on business with substantial capital and is likely to have sufficient assets available to meet its debts) (2) whether TABA Enterprises, LLC has misled others as to its corporate assets, (3) whether TABA Enterprises, LLC's assets have been intermingled with Alaina E. Paul's assets, and (4) whether TABA Enterprises, LLC's corporate formalities have been observed.   Corporate formalities may include such activities as issuing shares, holding shareholder or directors' meetings, and maintaining corporate books and records.

**Authorities:**   *Terren v. Butler*, 597 A.2d 69, 72 (N.H. 1991); *GE Mobile Water, Inc. v. Red Desert Reclamation, LLC*, 13-CV-357-PB, 2014 WL 1056938, at *7-*8 (D.N.H. Mar. 17, 2014)*; Nordica S.p.A. v. Icon Health & Fitness, Inc.*, 06-CV-451-PB, 2009 WL 2462570, at *4 (D.N.H. Aug. 11, 2009); 1 Fletcher Cyc. Corp. §§ 41.33, 33, 50.

**PROPOSED JURY INSTRUCTION NO. 38**

## <u>Copyright Infringement – Statutory Damages</u>

Coach seeks a statutory damage award.   Statutory damages are damages that are established by Congress in the Copyright Act. The purpose of statutory damages is to compensate the copyright owner, penalize the infringer, and deter future copyright-law violations.  You should award no less than $750 and up to $150,000 for each copyrighted design that you found to be infringed. You may select the amount as you consider just based upon the facts and circumstances of this case, as well as some of the factors I will tell you about in the next instruction.

**Authorities:**   17 U.S.C. § 101, et seq.; 17 U.S.C. § 504; 9th Cir. Model Civil Jury Instructions, Instruction No. 17.25; Instruction No. 17.27 (2006) (modified to reflect the facts of this case).

**PROPOSED JURY INSTRUCTION NO. 39**

**<u>Copyright Infringement Statutory Damages Factors to Consider</u>**

You have broad discretion in determining the amount of statutory damages to award for each copyright that was infringed.  For example, you should make a statutory damage award even if you find that Coach has not suffered any actual damages, or was not able to quantify any harm that it did suffer.  Likewise, you have the discretion to make a substantial statutory damages award in order to deter Defendants, other landlords, or other contributory copyright infringers from committing similar conduct to what occurred in this case.

In order to help you determine the amount of statutory damages that should be awarded in this case, there are several factors that you should consider, including the following:

1.      the degree of willfulness or the culpability of the defendants;

2.      the Defendants' cooperation or lack of cooperation in providing information about infringing activity;

3.      the profits realized by the Defendants as a result of the infringing activity;

4.      the value of the copyrights that were infringed;

5.      the revenues, if any, lost by Coach as a proximate result of the Defendants' conduct; and

6.      the need to deter the defendants and other landlords similarly situated from engaging in copyright infringement.

**Authority:**     *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 1315 F. Supp. 2d 511 (S.D.N.Y. 2004).

Date:  May 2, 2014

PLAINTIFFS,
COACH, INC. and
COACH SERVICES, INC.,
By their Attorneys,

*/s/ Kyle M. Zambarano*
Jeffrey K. Techentin (PHV Counsel)
jtechentin@apslaw.com
Kyle M. Zambarano (PHV Counsel)
kzambarano@apslaw.com
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
Tel: (401) 274-7200
Fax: (401) 351-4607

*/s/ Erica Mecler Caron*
Erica Mecler Caron [#264917]
ecmecler@apslaw.com
ADLER POLLOCK & SHEEHAN, P.C.
175 Federal Street
Boston, MA 02110
(617) 482-0600
Fax: (617) 482-0406

## <u>CERTIFICATION</u>

I hereby certify that I served the within Proposed Jury Instructions on the following counsel of record:

Lisa Snow Wade                          Jeremy Walker, Esq.
Robert S. Carey                         McLane, Graf, Raulerson & Middleton, P.A.
ORR & RENO, P.A.                        P.O. Box 326
One Eagle Square                        900 Elm Street
P.O. Box 3550                           Manchester, NH  03105-0326
Concord, NH  03302-3550


                                  */s/ Kyle M. Zambarano*

*680843_1.docx*